JOSEPH G. SLOAN, SHERIFF, V. THOMAS MANUFACTURING COMPANY ET AL.

FILED JUNE 21, 1899.   No. 8942.

1. Chattel Mortgages: SEVERAL MORTGAGEES. A chattel mortgage may be to a number of persons and may be to each a separate and several security of his claim or debt against the mortgagor.

2. ———: ———: FORECLOSURE: ACTIONS. Each of the persons so secured may enforce a separate foreclosure of his interest in the property thus mortgaged, and also may maintain a separate action to recover from the wrongful taker thereof the possession of the mortgaged property.

3. ———: CONSTRUCTION: VOLUNTARY ASSIGNMENTS. "Instruments in the form of chattel mortgages will not be held to constitute an attempted assignment for the benefit of creditors because of the contemplated reciprocal trusts imposed on each mortgagee in favor of the others; because the mortgages provide that they shall prorate one with another; because at the time the mortgages were made the mortgagor was unable to redeem, conveyed

all his property by the mortgages to secure debts greater than the value of the property; and because the parties contemplated that the mortgagees should take immediate possession; nor does the fact that the mortgages contained a power of sale in accordance with the statutory provisions for foreclosure render the transaction an assignment." (*Kilpatrick-Koch Dry Goods Co. v. Bremers*, 44 Neb. 863.)

4. **Voluntary Assignments: CHATTEL MORTGAGES.** "The act in regard to voluntary assignments refers only to assignments intended as such; that is, when a debtor undertakes to make an assignment under the statute he must make it in accordance with it, otherwise it is no assignment and is void. But the rules relating to the construction of mortgages and other instruments somewhat akin to assignments, but not intended as such, remain unchanged." (*Kilpatrick-Koch Dry Goods Co. v. Bremers, supra.*)

5. ———: ———. The instruments herein involved in litigation *held* not an attempted assignment under the act relative to voluntary assignments.

6. **Fraudulent Conveyances: QUESTIONS OF LAW AND OF FACT.** If the facts which render a transfer of property fraudulent as to creditors appear upon the face of the instrument of transfer or are undisputed, the question may be one of law for the court, but the question of fraud is in general one of fact for submission to the jury or trier of facts.

7. **Fraud: QUESTION OF FACT.** The question of fraud in the case at bar was one of fact.

8. ———: ———. The finding of the jury on the question of fraud *held* sustained by the evidence.

9. **Request for Immaterial Findings: REVIEW.** The refusal to submit a special finding, the answer to which will not be material in a decision of the issues in litigation, is not prejudicial.

10. **Property Subject to Attachment: ACCOUNTS: DAMAGES FOR WRONGFUL SEIZURE.** In general, accounts, in their substance, or the debts, are not subject to levy by attachment or execution, but the effect of section 214 of our Code of Civil Procedure is to subject them to the lien of a levy of a writ of attachment; and, in an action for a wrongful seizure and retention of possession of property under a writ of attachment, inclusive of accounts, the plaintiff may recover damages for the wrongful acts in regard to the accounts.

11. ———: ———: ———. The face value of the accounts may or may not furnish a measure of the damages.

ERROR from the district court of Pawnee county. Tried below before LETTON, J. *Affirmed.*

*J. H. Broady* and *Story & Story*, for plaintiff in error.

*Conley & Fulton, Francis Martin, G. E. Becker,* and *Lindsay & Raper, contra.*

HARRISON, C. J.

The firm of Meek, Skinner & Co., in the retail hardware and implement business in Pawnee City, had during its career of several years become heavily indebted, and on February 16, 1895, executed a chattel mortgage in which was included the firm's stock of hardware and implements then on hand, and in terms secured the payment of amounts of indebtedness to sixty-five creditors, the name of each and the amounts due the creditors being stated in a schedule or list attached to and a part of the chattel mortgage. An instrument was at the same time executed by which the notes and accounts belonging to the firm were transferred to the creditors. These instruments were executed and filed in the office of the clerk of Pawnee county. Of the execution of the instruments but two of the creditors had any prior or contemporaneous knowledge. Some of the creditors accepted the action of the firm as set forth in the instruments to which we have referred, others refused to accept; of the latter was the First National Bank of Pawnee City, and for it and other creditors, respectively, suits against the firm were instituted in which writs of attachment were procured to issue and levies were made on the property described in the mortgage. There was also in the returns to the writs a statement that the levies extended to and included the notes and accounts. For some of the mortgagees who had accepted the actions of the firm as expressed in the mortgage and written transfer of the notes and accounts this, an action of replevin, was commenced. No bond was given, and the suit proceeded as one for damages and was prosecuted to judgment in the plaintiff's favor. The sheriff justified under his attach-

ment rights, and from the adverse determination an error proceeding to this court has been perfected.

The main instrument, the effect of which is involved in the controversy herein, was in form a chattel mortgage, was in favor of, as we have before stated, sixty-five persons, creditors of the firm, and to the extent the record discloses they were all the creditors. There was a provision that the parties grantees should prorate in the proceeds in the event of a foreclosure of the mortgage, and this was in contemplation of the parties who executed it at the time, but each grantee was specifically named, as was the amount due him, and the mortgage was clearly one joint and several as to the parties who were to take under it,—was as if sixty-five simultaneous mortgages had been executed on the same property to the parties with a provision that each should prorate in the proceeds of the property if foreclosures occurred. A mortgage which in terms runs to a number of different persons may be to cover a separate and several liability to each of the persons named. (Jones, Chattel Mortgages sec. 336; Pingrey, Chattel Mortgages sec. 104; *Adams v. Niemann,* 46 Mich. 135, 8 N. W. Rep. 719; 5 Am. & Eng. Ency. Law [2d ed.] 956.) And either mortgagee may enforce his claim by foreclosure. (*Adams v. Niemann, supra;* Herman, Chattel Mortgages 357; *Burnett v. Pratt,* 22 Pick. [Mass.] 556; *Gilson v. Gilson,* 2 Allen [Mass.] 115; *Lyon v. Balentine,* 29 N. W. Rep. [Mich.] 837; *Walker v. White,* 27 N. W. Rep. [Mich.] 554.) If the right to foreclose exists, it seems to logically follow that as against third persons one or more of the mortgagees may replevin the property and thus defend the right of possession which is with the right to foreclose.

A number of the creditors who were included in the mortgage did not and would not accept it and refused to recognize it. This did not invalidate it or render it any the less forceful in favor of those who did accept it. (1 Cobbey, Chattel Mortgages sec. 411; 1 Jones, Mortgages sec. 109.) Such a mortgage may be good as to one and

invalid as to another or others of the creditors named in it. (Pingrey, Chattel Mortgages sec. 104; 5 Am. & Eng. Ency. Law [2d ed.] 956.) The greater number of the mortgagees who did adopt the mortgage did not do so until after the writs of attachment were·levied. Their asserted rights were held ·inferior and subject to the attachment liens. This was correct. (*Rogers v. Heads Iron Foundry*, 51 Neb. 39.) But this did not affect or disturb the rights of the prior acceptors of the mortgage against the subsequently acquired attachment liens. Against the latter the prior mortgagees' had the right to the possession of the property and to subject it to the satisfaction of their liens.

It is argued that the transfer herein involved was an attempted evasion of assignment law, and therefore void. Within the doctrine of this court announced in *Kilpatrick-Koch Dry Goods Co. v. Bremers*, 44 Neb. 863, and kindred decisions, the instruments are not open to this attack.

On the point of the fraudulent character of the mortgage and bill of sale it is argued that the instruments themselves bore the stamp of and disclosed fraud, or quoting as does the writer of the brief, "Where the facts relied upon to render a mortgage fraudulent as to creditors appear upon the.face thereof or are undisputed, the question of fraud is one of law for the court." (*Houck v. Heinzman*, 37 Neb. 463.) We complete the statement there made. "In all other cases it is a question of fact for the consideration of the jury." As we view the matters herein presented there was nothing disclosed by the face of the papers which rendered the transaction fraudulent and void, and on the evidence as a whole the character of the transfer was one of fact and for submission to the jury. The decision of the jury on the subject of fraud was sustained by sufficient evidence and must stand.

It is argued that the trial court erred in its refusal to submit to the jury a special finding requested for plaintiff in error. Within the view we have adopted of the

matter in litigation the finding to which we have just alluded could not have affected the disposition to be made of the cause,—would not have been material; hence the refusal did not prejudice the complainant.

Counsel for plaintiff in error asked questions, the object of which was to show by the answers the amount for which about three-fourths of the stock of the hardware and implements had been sold by the sheriff at private sale. To these objections were sustained and consistent offers to prove were overruled. The only service which this testimony could have performed for the party for whom it was offered would have been to reduce to the minimum the value of the goods to which it was sought to apply it, and this only as the value as thus shown of the three-fourths could be applicable relatively to the whole or to all, and if thus applied, it gives a value larger than that established by the verdict of the jury, which being true, the plaintiff in error has not been prejudiced by the suppression of the offered testimony.

What we state and have stated which in the words employed refers specifically to the chattel mortgage is just as applicable, and is and was intended to, and does, embrace the bill of sale.

The return of the sheriff on the writs of attachment disclosed that he had levied upon the stock of hardware and implements and the notes and accounts of the firm. Accounts are not the subject of levy so as to transfer the debt; that the return so stated was without effect, the original owner, or if the accounts, as in this case, had been transferred, the transferee, could have collected them. (1 Shinn, Attachment & Garnishment sec. 208, p. 402, citing *Lesher v. Getman,* 30 Minn. 321; *Goodbar v. Lindsley,* 11 S. W. Rep. [Ark.] 577, 51 Ark. 380; 20 Am. & Eng. Ency. Law 1062.) The foregoing is the general rule, but under the general subject of "Attachment" and disposition of the attached property in our Code of Civil Procedure the appointment of a receiver is provided, and in section 214 it is said: "Such receiver shall take pos-

session of all notes, due bills, books of accounts, accounts, and all other evidences of debt, that have been taken by the sheriff or other officer, as the property of the defendant in attachment, and shall proceed to settle and collect the same. For that purpose he may commence and maintain actions in his own name as such receiver; but in such actions no right of defense shall be impaired or affected." There seems to have been in the foregoing somewhat taken for granted by the legislators, but the only manner in which the portion which refers to accounts can be given force is to recognize that a levy by attachment on them is a lien on the debt and gives the exclusive right to collect, and this we will do.

The property was not returned, and its value, inclusive of the accounts, may have furnished the proper measure of the damages; none other was afforded.

What we have said fully meets the arguments on the objections to instructions given and those requested and refused; also the contention that the court erred in overruling the motion for judgment in favor of plaintiff in error notwithstanding the general verdict against him. The judgment of the district court must be

AFFIRMED.